UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH MICHAEL CHONTOS,

        Petitioner,

v.                                 CASE NO. 06-13049
                                  HONORABLE VICTORIA A. ROBERTS

MARY BERGHUIS,

        Respondent.
_____/

**OPINION AND ORDER DENYING HABEAS CORPUS PETITION
AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY**

Petitioner Joseph Michael Chontos seeks the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent argues in an answer to the Habeas Petition that Petitioner's claims are unexhausted, not cognizable, or without merit. The Court agrees that Petitioner's claims do not warrant granting the writ of habeas corpus. Accordingly, the Habeas Petition will be denied.

**I. Background**

On September 17, 2002, a circuit court jury in Wayne County, Michigan found Petitioner guilty of: two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 520b(1)(a); two counts of second-degree criminal sexual conduct, Mich. Comp. Laws § 520c(1)(a); and one count of exhibiting obscene matter to a minor, Mich. Comp. Laws § 722.675. The convictions arose from allegations that Petitioner sexually abused his young nephews. The trial court sentenced Petitioner to concurrent terms of imprisonment as follows: eighteen and three-quarters to forty years for the first-degree criminal sexual conduct; five to fifteen years for the second- degree criminal sexual conduct; and one to two years for exhibiting obscene material to

a minor.

In an appeal of right, Petitioner argued that (1) the statute for exhibiting sexually explicit material to a minor was unconstitutional, (2) the trial court improperly considered the fact that he exercised his right to go to trial and refused to admit guilt, (3) the evidence was insufficient to sustain the conviction for exhibiting sexually explicit material to minors, and (4) the trial court abused its discretion by permitting the prosecutor to impeach a witness with extrinsic evidence of collateral matters. The Michigan Court of Appeals was unpersuaded by these arguments, and on July 29, 2004, it affirmed Petitioner's convictions and sentence. *See People v. Chontos*, Nos. 246799 and 246884, 2004 WL 1699070 (Mich. Ct. App. July 29, 2004) (unpublished). Petitioner moved for reconsideration on the ground that his sentence must be vacated in light of the Supreme Court's recent decision in *Blakely v. Washington*, 542 U.S. 296 (2004). The state court of appeals denied reconsideration without discussion.

Petitioner then applied for leave to appeal in the Michigan Supreme Court where he alleged that (1) the trial court punished him for refusing to admit guilt and for going to trial, (2) the trial court violated the holding in *Blakely*, and (3) the evidence was insufficient to sustain his conviction for exhibiting sexually explicit material to minors. The Michigan Supreme Court denied leave to appeal on April 26, 2005, because it was not persuaded to review the issues. *See People v. Chontos*, 472 Mich. 895; 695 N.W.2d 72 (2005).

Petitioner filed his Habeas Corpus Petition through counsel on July 3, 2006. The grounds for relief read:

> I.  The jury convicted Chontos of two penetrations. The state trial judge disagreed with the jury's verdict because she didn't think anyone who had sat through the trial could disbelieve the children. This led to the judge finding that Chontos perpetrated eleven

2

penetrations, which raised Chontos's mandatory sentencing guideline score by 100 points, substantially increasing his sentences. The sentences Chontos received violated his Sixth Amendment right to a jury trial under the principles set forth in *Blakely v. Washington*.

II. At sentencing the state trial judge expressed her belief that Chontos should have pled guilty rather than go to trial. She berated him for subjecting the complainants to the trauma of having to testify. And she chastised him for refusing to admit he was guilty. The judge sentenced Chontos to the highest possible sentence to punish him for refusing to admit guilt, a Fifth Amendment violation, and to punish him for going trial, a Sixth Amendment violation.

Respondent contends that Petitioner's *Blakely* claim is not exhausted or applicable, that Petitioner's arguments about the scoring of the sentencing guidelines is not cognizable on habeas review, and that Petitioner's second claim lacks merit. The Court need not decide whether Petitioner exhausted state remedies for all his claims or whether he has an available remedy to exhaust, because the exhaustion requirement is not a jurisdictional one. *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005), *cert. denied sub nom Houk v. White*, __ U.S. __, 127 S. Ct. 578 (2006), *and cert. denied sub nom White v. Houk*, __ U.S. __, 127 S. Ct. 581 (2006). The Court therefore will proceed to adjudicate the merits of Petitioner's claims, using the following standard of review.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claims on the merits–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

3

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

When a state court fails to articulate a basis in federal law for rejecting a prisoner's federal claims, "deference is owed only to the result reached by the [state court], and not its reasoning, and this court must conduct an independent review of the record and the law to determine whether the state court's ruling comports with the requirements of § 2254(d)." *Stewart v. Erwin*, 503 F.3d 488, 492 (6th Cir. 2007) (quotation marks and end citations omitted). Section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). "Furthermore, state findings of fact are

4

presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

## III. Discussion

### A. Judicial Fact Finding

The first habeas claim alleges that the trial court sentenced Petitioner for eleven sexual penetrations even though the jury found Petitioner guilty of only two penetrations. This allegation is based on (1) the trial court's scoring of an offense variable for the number of penetrations and (2) the trial court's comment that no "person who sat through this trial, with an impartial mind towards the circumstances, could in any way disbelieve these children." Tr. Oct. 2, 2002, at 16-17. Petitioner contends that the trial court usurped the jury's duty to assess the witnesses' credibility and to determine the facts. According to Petitioner, the trial court made an independent finding of facts in violation of his Sixth Amendment right to a jury trial and contrary to the Supreme Court's decision in *Blakely*.

The United States Supreme Court "has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham v. California*, __ U.S. __, __, 127 S. Ct. 856, 863-64 (2007). In other words, "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." *Id*. at 860. "[T]he relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional

5

facts, but the maximum he may impose *without* any additional findings." *Blakely*, 542 U.S. at 303-04.

Petitioner's reliance on *Blakely* is misplaced because a majority of Supreme Court Justices in *Blakely* indicated that its decision applied only to determinate sentencing systems. *See id*. at 308-09. Michigan has an indeterminate sentencing system in which the minimum sentence generally is based on sentencing guidelines and the maximum sentence is set by law, not by the trial court. *People v. Claypool*, 470 Mich. 715, 730 n.14; 684 N.W.2d 278, 286 n.14 (2004). "[B]ecause a Michigan defendant is always subject to serving the maximum sentence provided for in the statute that he or she was found to have violated, that maximum sentence constitutes the 'statutory maximum' as set forth in *Blakely*." *People v. Drohan*, 475 Mich. 140, 163-64; 715 N.W.2d 778, 791 (2006), *cert. denied*, __ U.S. __, 127 S. Ct. 592 (2006).[1]

Petitioner's maximum sentence of forty years for first-degree criminal sexual conduct fell within the statutory maximum of life imprisonment. Mich. Comp. Laws § 750.520b(b). Furthermore, the Michigan Supreme Court's interpretation of state law binds this Court on habeas review. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005). The Court concludes that Petitioner's sentence did not implicate *Blakely* and that his *Blakely* claim lacks merit. *See Tironi v. Birkett*, No. 06-1557, 2007 WL 3226198 (6th Cir. Oct. 26, 2007) (unpublished) (affirming the District Court's conclusion that Tironi's

---

[1] The Michigan Supreme Court recently reaffirmed its holding in *Drohan* that Michigan's indeterminate sentencing scheme is valid under *Blakely*. *See People v. Harper*, 479 Mich. 599; 739 N.W.2d 523 (2007); *see also People v. McCuller*, 479 Mich. 672, 686; 739 N.W.2d 563, 571 (2007) (stating that the United States Supreme Court's decision in *Cunningham* does not require the Michigan Supreme Court to modify its decision in *Drohan* and that a sentencing court does not violate *Blakely* by engaging in judicial fact-finding to score the recommended minimum sentence range).

sentence did not violate *Blakely* because *Blakely* does not apply to Michigan's indeterminate sentencing scheme).

## B. Alleged Punishment for Exercising Constitutional Rights

Petitioner's second and final claim alleges that the trial court sentenced Petitioner to the highest possible sentence because Petitioner exercised his Sixth Amendment right to go to trial and his Fifth Amendment right not to admit that he was guilty. The Michigan Court of Appeals considered only Petitioner's Sixth Amendment claim. It determined that

> rather than chastising defendant for going to trial, as defendant suggests, the trial court is actually addressing directly the multiple statements made by defendant's family members pleading with the court that defendant did not commit the crime and responding to defendant's claim that he has suffered because of the charges and trial. The trial court's statement expresses to defendant that he brought it about himself and that suffering through the process is not a basis for leniency.

*Chontos*, 2004 WL 1699070, at *3. The court of appeals concluded that "taken as a whole, there is simply no evidence that the trial court sentenced defendant more harshly based on the exercise of his constitutional right to a jury trial." *Id*.

### 1. Fifth and Sixth Amendment Rights

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend. V. The Amendment is applicable to the states through the Fourteenth Amendment. *Estelle v. Smith*, 451 U.S. 454, 462 (1981). "The essence of this basic constitutional principle is 'the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips.'" *Id*. (emphasis in original) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 581-82 (1961)). "Any effort by the State to compel [the defendant] to testify

against his will at the sentencing hearing clearly would contravene the Fifth Amendment." *Id*. at 463. This rule applies to capital sentencing cases, *see id*., as well as noncapital sentencing proceedings. *Mitchell v. United States*, 526 U.S. 314, 326 (1999).

The Fifth Amendment privilege to remain silent "is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence.'" *Estelle v. Smith*, 451 U.S. at 468 (quoting *Malloy v. Hogan*, 378 U.S. 1, 8 (1964)). And no adverse inference from a defendant's silence may be made at sentencing. *Mitchell v. United States*, 526 U.S. at 327-30. "By holding [a defendant's] silence against [him or] her in determining the facts of the offense at the sentencing hearing, [a court] impose[s] an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." *Id*. at 330. A defendant also may not be punished for exercising the Sixth Amendment right to a jury trial. *United States v. Jackson*, 390 U.S. 570, 581 (1968); *United States v. Medina-Cervantes*, 690 F.2d 715, 716 (9th Cir. 1982).

### 2. The Trial Court's Comments

Petitioner asserts that the trial court punished him for refusing to admit guilt. The record, however, indicates that the trial court commented about Petitioner's failure to *deny* guilt. After noting that Petitioner had not expressed any concern for the victims, the trial court said: "Nor do you, as some of your family members do, deny committing this crime." Tr. Oct. 2, 2002, at 17. Thus, according to the trial court, Petitioner implicitly conceded guilt by not denying that he committed the crimes.

On the other hand, the court also stated that it had encouraged spending time on a

resolution of the case, so that the family could have the best outcome. *See id.* The court then said:

> And what's really sad is how close this case came to a resolution. Many of your family members don't know, but you know, this wasn't going to be a no contest plea; this would a guilty plea. And it was 2 years of disagreement. And we are talking about how this effects you, and no one on this side is talking about how this effects the victims in the case.
>
> . . . .
>
> You made a choice to bring this to a jury, to bring these two boys to testify, and the jury came back with a verdict.

*Id.* at 17-18.

After the trial court sentenced Petitioner, defense counsel pointed out that, if there had been a plea, it would have been a no-contest plea, not a guilty plea. The trial court responded by stating that it would not have accepted a no-contest plea. The court went on to say:

> [T]hat did not result. What resulted is that these children had to go through a trial and testify. The jury found the verdict, and this court must sentence comporting with that verdict.
>
> The humiliation that was had was not on the part of the defendant who had to sit there; but on the part of the boys who had to extensively, hour after hour, testify about these things. And so the jury had the verdict, and there is the sentence.

*Id.* at 20-21.

### 3. Analysis

The trial court's comments must be viewed in their context. Prior to making the comments, the trial court heard from Petitioner's relatives, some of whom said that the sexual conduct was consensual, that the complainants and their mother lied, that Petitioner did not commit the crimes, and that Petitioner was a good and caring young man. *Id.* at 13-16.

9

Petitioner apologized "for all the pain [his] family ha[d] gone through." He said, "This has been a struggle. It has hurt everyone." *Id.* at 16. He then pleaded with the trial court not to send him to prison. He stated that jail was destroying him, that he was a good person, and that he needed to be with his family.

The trial court responded to Petitioner's remarks by stating that Petitioner had chosen to go to trial, that the court could not disregard the jury's verdict, and that probation was not a realistic option. The court also stated that sexually assaulting a child was clearly enough to destroy a persons's life and that, "the court's only concern has to be towards the victims in the case." The court concluded that it could only sentence Petitioner to an appropriate sentence under the sentencing guidelines. *Id.* at 17-19.

The trial court's comments may have been intended to convey to Petitioner and his family that Petitioner could have had a lenient sentence had he accepted the prosecutor's offer to plead guilty or no-contest to third-degree criminal sexual conduct with a sentence of six to fifteen years. *See* Tr. Sept. 11, 2002, at 3. The court arguably was saying that, in light of the jury's verdict and Petitioner's rejection of the plea offer, the court was required to sentence Petitioner under the sentencing guidelines, which were less favorable to him.

The trial court's expression of sympathy for the victims and its consideration of Petitioner's moral culpability were natural reactions to the evidence adduced at trial and raises no constitutional concern. *Baston v. Bagley*, 420 F.3d 632, 638 (6th Cir. 2005) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)), *cert. denied*, __ U.S.__, 126 S. Ct. 2294 (2006). "[T]he court could not realistically be expected to expunge from its mind the evidence presented at trial," and its acknowledgment of the impact of the evidence presented at trial did not violate

the Constitution. *Roussell v. Jeane*, 842 F.2d 1512, 1524 (5th Cir. 1988) (quoting *United States v. Campbell*, 684 F.2d 141, 184 (D.C. Cir. 1982)).

The trial court's "articulation of additional factors for the sentence imposed . . . [also] lessens any concern . . . that [Petitioner's] sentence was based upon an improper assumption." *United States v. Santamaria*, 788 F.3d 824, 828 (1st Cir. 1986). The additional factors considered were the unlikelihood that Petitioner could be rehabilitated and the fact that, in the court's mind, Petitioner was a dangerous predator. Tr. Oct. 2, 2002, at 19.

If Petitioner had been filled with remorse and had admitted his crimes, it is possible he would have received a reduced sentence, because "those who admit their guilt are often less threatening to society." *United States v. McClain*, 2 F.3d 205, 207 (7th Cir. 1993). "[T]his does not mean that he was punished for maintaining his innocence in any way that the Constitution recognizes." *Id*. The failure to show remorse is a relevant factor for courts to consider when determining the appropriate sentence because "[a] contrite defendant is considered to be more likely to benefit from rehabilitation and is, therefore, more deserving of leniency in sentencing." *El v. Artuz,* 105 F. Supp.2d 242, 255 (S.D. N.Y. 2000).

### 4. *Ketchings v. Jackson*

The United States Court of Appeals for the Sixth Circuit has granted habeas relief in a case similar to this one. *See Ketchings v. Jackson*, 365 F.3d 509 (6th Cir. 2004). Ketchings was sentenced to almost twice the maximum recommended under the Michigan sentencing guidelines for second-degree murder. He argued on appeal from his conviction and sentence that the trial court improperly considered his failure to admit guilt at sentencing. The Michigan Court of Appeals stated that the sentencing judge was merely addressing remorsefulness in the context of

11

Ketchings' rehabilitative potential and avoidance of responsibility for his actions. The state court of appeals concluded that Ketchings' sentence was not improperly influenced by his failure to admit guilt or by a desire to punish Ketchings for exercising his constitutional right to maintain his innocence.

Ketchings raised the same issue in a federal habeas corpus petition, which the District Court granted. The Court of Appeals for the Sixth Circuit affirmed the District Court's decision. It agreed with Ketchings that his sentence was imposed in violation of his Fifth Amendment right against self-incrimination. The Court of Appeals opined that the Michigan Court of Appeals had not merely addressed remorsefulness in the context of Petitioner's rehabilitative potential, but had criticized Ketchings for his failure to admit guilt even though Ketchings made a lengthy statement expressing his remorse.

Petitioner's case is distinguishable from *Ketchings*. Unlike Ketchings, Petitioner did not assert a claim of innocence at sentencing, and he also did not make a lengthy statement of remorse. He made a short apology to his own family and asked not to be sent to prison. Furthermore, the trial court did not opine that Petitioner could not be rehabilitated until he acknowledged that he did something wrong. Instead, the trial court stated that, in light of the entire situation and the circumstances, the hope of rehabilitation was "very small."

It is also noteworthy that the trial court sentenced Petitioner within the state sentencing guidelines, unlike Ketchings' sentencing judge, who exceeded the guidelines and imposed a sentence almost twice as much as the recommended sentencing guidelines. "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin*

*v. Jackson*, 213 F.3d 298, 231 (6th Cir. 2000) (quoting *Williams v. New York*, 337 U.S. 241, 245 (1949)). The Court concludes that the trial court did not punish Petitioner for going to trial or for not explicitly admitting guilt.

**IV. Conclusion**

The state appellate court's findings did not result in an unreasonable determination of the facts, and its conclusions were not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the Petition for a Writ of Habeas Corpus is DENIED. However, because reasonable jurists could find the Court's assessment of Petitioner's second claim to be debatable, the Court GRANTS a certificate of appealability as to Claim II. The Court DECLINES to issue a certificate of appealability on Petitioner's first claim.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: December 10, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on December 10, 2007.

s/Carol A. Pinegar
Deputy Clerk